UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HECTOR GOMEZ-HERNANDEZ,

    Plaintiff,

v.

                                        Case No.: 2:21-cv-00610-JLB-KCD

CFS ROOFING SERVICES, LLC,

    Defendant.
_____/

## ORDER

    Hector Gomez-Hernandez ("Plaintiff") filed suit against his former employer, CFS Roofing Services, LLC ("Defendant"). Before the Court is Defendant's Motion for Summary Judgment (Doc. 38) (the "Motion"). Plaintiff responded to the Motion (Doc. 42) and Defendant filed a reply in further support of the Motion (Doc. 46). After careful review of the summary judgment record, the Motion is **GRANTED** in part and **DENIED** in part.

### BACKGROUND

    Plaintiff began working for Defendant in or around April 2019, as the Director for Human Resources. (Doc. 1 at ¶ 19; Doc. 8 at ¶ 19). Plaintiff states that he suffers from several military service-connected disabilities including tinnitus, sleep apnea, general anxiety disorder, major depression, and adult ADD/ADHD. (Doc. 43-5 at 12–13). Plaintiff joined the Navy as an entry level recruit in 1996. (Doc. 43-5 at 25). Then, from 2000 to 2006, he was a recruiter with the Navy,

1

eventually becoming a recruiter in charge of the Fort Myers Navy Recruiting Office. (Doc. 43-5 at 27). Then, the Navy transferred him to Atlanta, where he "was in charge of five different recruiting offices in the Metro Atlanta area" from 2006 to 2010. (Doc. 43-5 at 28). Following that, from 2010 to 2013, he served as the regional director of recruiting for the U.S. Navy and from 2013 to 2015, he was a Navy HR business partner doing training workforce development. (Doc. 43-5 at 29). Plaintiff was then a senior director at a Navy Reserve Center until April 2016, and his last day on active duty was July 1, 2016. (Doc. 43-5 at 30). An affidavit signed by Plaintiff states that his military service-connected mental health disabilities substantially impair the major life functions of learning, thinking, interacting with others, sleeping, and speaking. (Doc. 43-2 at 3). Plaintiff claims that during his interview, he did not mention his service-connected disabilities, but he and Mr. Crowther discussed his military service during the interview. (Doc. 43-5 at 22–23).

      Plaintiff states that he was seeing a doctor once a week, or at minimum twice a month, for general anxiety, which he maintains is service connected. (Doc. 43-5 at 48). Plaintiff explains that he scheduled his medical appointments either first thing in the morning or late in the afternoon, so that he could still go into work. (Doc. 43-5 at 48). Plaintiff alleges that he made his supervisor, David Crowther, aware of his doctors' appointments via email and by sharing his calendar with him, and at least on one occasion, he reminded Mr. Crowther about an appointment verbally in person. (Doc. 43-5 at 55–56). When he reminded Mr. Crowther about one specific doctor's appointment, Plaintiff alleges that Mr. Crowther stated, "Yeah, no

2

problem." (Doc. 43-5 at 56).

Although Plaintiff admits that Defendant only offered five days of paid vacation when he was hired, he claims that Mr. Crowther verbally "ensured [him] not to worry about that" and stated that if Plaintiff "ever needed more than five days, . . . all [he] had to do was talk to [Mr. Crowther]." (Doc. 43-5 at 39–40).

Plaintiff states that on or about November 8, 2019, Mr. Crowther questioned him about his "many doctor['s] appointments." (Doc. 43-5 at 66). Specifically, Plaintiff claims that Mr. Crowther asked Plaintiff "Are you okay? You have a lot of doctors' appointments. You're not dying, are you?" (Doc. 43-5 at 67). And when Plaintiff explained that he was seeing a mental health professional, he asserts that Mr. Crowther responded, "Woah, you're not going to come shoot up the place, are you? . . . Well, if you do, just don't shoot me." (Doc. 43-5 at 67–68). Mr. Crowther denies that this conversation took place. (Doc. 38-9 at 5). Further, completely contradicting Plaintiff's testimony regarding this event, Mr. Crowther maintains that he "was never aware of [Plaintiff's repeated] doctor's appointments" and that "[it] was not until after Plaintiff's termination that [he] was made aware of any of [Plaintiff's] service-connected disabilities, or any disability, at all." (Doc. 38-9 at 4). Moreover, Mr. Crowther states that he checked in with Plaintiff's assistant, Ashley Buller, and others that worked around Plaintiff, but "[n]obody knew where he was at." (Doc. 43-4 at 56). But Ms. Buller states that when Mr. Crowther came to the office looking for Plaintiff, she let him know when Plaintiff was at a doctor's appointment. (Doc. 43-3 at 29–30).

Plaintiff states that he was terminated at the end of November 2019. (Doc. 43-5 at 15).[1] Plaintiff testified that "[p]rior to the incident with Mr. Crowther, [he] routinely was praised . . . to the point that [they] were making plans for the move to their new location. . . . At no point in time was there any indication that . . . [he] was a poor performer or that [he] was in jeopardy of losing [his] job. On the contrary. Any conversation that [he] had with Mr. Crowther was positive reinforc[ement] . . . of [him] doing a good job." (Doc. 43-5 at 65–66). Plaintiff has no documentation of these positive reviews. (Doc. 43-5 at 66). Mr. Crowther brings up two occasions whether Plaintiff's work was considered "subpar" and alleges that he spoke face-to-face with Plaintiff about his absences but could provide no documentation or other evidence to support such conversations. (Doc. 43-4 at 56–59).

Mr. Crowther maintains that "Plaintiff was terminated due to his . . . [f]ailure to work 45-50 hours a week, as agreed upon; and . . . [his] [f]ailure to request Paid Time Off and/or Unpaid Time Off for his repeated absences from work." (Doc. 38-9 at 4). Mr. Crowther asserts that "Plaintiff was not terminated for any reason associated with his military service or for having any sort of disability." (Doc. 38-9 at 4). But Mr. Crowther confirms that there is no written documentation

---

[1] The Court has reviewed the record and it appears that neither Defendant nor Mr. Crowther ever confirms the date or month that Plaintiff was terminated but Defendant does not appear to disagree with Plaintiff's timeline. (*See* Doc. 46 at 4 ("Plaintiff's sworn deposition testimony was that he only told David Crowther that he had to miss some time of work to go to the doctor 'five or six times' from April 2019 through November 2019.")).

4

explaining why Plaintiff was terminated and, when asked about evidence supporting his having conversations with Plaintiff about his performance, stated: "The only evidence that I have would be his coworkers noticed he was never around." (Doc. 43-4 at 57). Indeed, three of Plaintiff's former coworkers filed affidavits with the following sworn statements: (1) "Between 2 and 4 days a week Hector Gomez left in midafternoon . . . . I know these facts because I shared the same office trailer with him" (Doc. 38-10); (2) "Hector Gomez often left early . . . or came in late . . . . He was Out of the office at least 3+ days a week . . . . [I]t had become an office joke how he was never around when someone was looking for him" (Doc. 38-11); and (3) "I can attest that Hector Gomez was not in his office, the job trailer or anywhere else on campus a minimum of (3) days a week or more. . . [I]t did upset me because I needed the hiring of new employees, and everyone else was working full work weeks." (Doc. 38-12).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018). An issue is "genuine" if a reasonable trier of fact, viewing all

of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[M]atters of credibility are for a jury to settle at trial, not a trial court on summary judgment." *Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338, 1350 (11th Cir. 2023); *Prieto v. Collier Cnty.*, No. 2:13-cv-489-FtM-38CM, 2014 WL 4784330, at *6 (M.D. Fla. Sept. 24, 2014) ("[O]nly a jury can make the necessary credibility determinations to settle [a] 'he said, she said' dispute."); *see also Wooten v. Fed. Exp. Corp.*, 325 F. App'x 297, 303 (5th Cir. 2009) ("The difficulty of evaluating discrimination claims at the summary judgment stage is well known and derives from obvious sources, namely the importance of 'he said / she said' credibility determinations."). In ruling on a motion for summary judgment, the Eleventh Circuit has directed that courts "resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-movant's favor." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014); *see also DA Realty Holdings, LLC v. Tenn. Land Consultants, LLC*, 631 F. App'x 817, 820 (11th Cir. 2015) ("[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may be properly granted as a matter of law.").

## DISCUSSION

**I.     Count I – USERRA**

Count I of the Complaint asserts a claim for violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). (Doc. 1 at ¶¶ 36–46). "To establish a prima facie case of discrimination under the USERRA, the plaintiff must demonstrate by a preponderance of the evidence that his military membership or service was a motivating factor in the employer's decision." *Ward v. United Parcel Serv.*, 580 F. App'x 735, 738 (11th Cir. 2014) (citation omitted). "A motivating factor does not necessarily have to be the *sole* cause for the employer's decision, but is defined as one of the factors that a truthful employer would list as its reasons for its decision." *Id.* (emphasis added) (citation omitted).

> A court can infer a discriminatory motivation from a variety of considerations, such as: (1) the temporal proximity between the plaintiff's military activity and the adverse employment action; (2) inconsistencies between the proffered reason for the employer's decision and other actions of the employer; (3) an employer's expressed hostility toward members of the protected class combined with its knowledge of the plaintiff's military activity; and (4) disparate treatment of similarly situated employees.

*Id.* When an employee meets his burden, "the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238–39 (11th Cir. 2005) (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)).

Here, viewing the evidence in the light most favorable to Plaintiff, the

summary judgment record demonstrates that at least two of the factors that may establish discriminatory motivation are present. First, there appears to be inconsistencies between the proffered reason for the employer's decision and other actions of the employer. For example, Mr. Crowther avers that he was unaware of Plaintiff's doctor's appointments during his employment (Doc. 38-9 at 3), Defendant's calendar shows a few days off approved for Plaintiff, but the approved time off for him is not weekly or even monthly (*see* Doc. 38-7), and Mr. Crowther's calendar does not show shared entries from Defendant's calendar with time off (*see* Doc. 38-8), but Plaintiff asserts that he made Mr. Crowther aware of his doctors' appointments via email and by sharing his calendar with him, and at least on one occasion, he reminded Mr. Crowther about an appointment verbally in person. (Doc. 43-5 at 55–56). And Plaintiff's assistant, Ms. Buller, explains that when Mr. Crowther came to the office looking for Plaintiff, she let him know when Plaintiff was at a doctor's appointment. (Doc. 43-3 at 29–30). These statements contradict Mr. Crowther's claims that he was not made aware of Plaintiff's repeated doctor's appointments during his employment with Defendant.

Second, there is record evidence that Mr. Crowther said to Plaintiff, "Woah, you're not going to come shoot up the place, are you? . . . Well, if you do, just don't shoot me." (Doc. 43-5 at 67–68). Although Mr. Crowther vehemently denies that this conversation occurred (Doc. 38-9 at 5) and Plaintiff's former assistant has no recollection of being told about this conversation (Doc. 43-3 at 36–37), a reasonable jury could believe Plaintiff and construe Mr. Crowther's alleged statement as "an

8

employer's expressed hostility toward members of the protected class combined with its knowledge of the plaintiff's military activity." *See Ward*, 580 F. App'x at 738; *see also Carrasco v. Town of Fort Myers Beach, Fla.*, No: 2:16-cv-21-FtM-99CM, 2017 WL 3149356, at *1 (M.D. Fla. July 25, 2017) ("[I]f the resolution of a material fact . . . presents a 'he said, she said' scenario, and if the record has evidence genuinely supporting both sides of the story, then summary judgment is not appropriate.").

Defendant argues that it has "proven that Plaintiff's employment was terminated for legitimate reasons, standing alone" (Doc. 38 at 14), but there is a genuine issue of material fact as to whether Mr. Crowther made derogatory comments that could be construed as hostile towards Plaintiff's military activity and whether such comment was allegedly made in the same month that Plaintiff was terminated. There is also an issue of fact as to whether Mr. Crowther knew about Plaintiff's doctors' appointments, which calls into doubt whether Plaintiff was terminated because of the appointments. It is plainly for the jury to decide whether these conversations took place and whether they constitute evidence that Plaintiff was terminated, at least in part, due to his military service. Accordingly, although the Court believes that this is a close call, it denies summary judgment on Count I.

## II. Count II – FCRA Disability Discrimination

Count II of the Complaint asserts a claim for discrimination based upon disability brought under the Florida Civil Rights Act of 1992 ("FCRA"). (Doc. 1 at ¶¶ 47–55). Actions under the FCRA are analyzed under the same framework as the ADA. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000).

Accordingly, the Court will address Plaintiff's disability claims using an ADA analysis.

To establish a prima facie case of employment discrimination under the ADA, Plaintiff must demonstrate "that (1) he has a disability, (2) he is a 'qualified individual,' which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) [Defendant] unlawfully discriminated against him because of the disability." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1226 (11th Cir. 2005).  The duty to provide an accommodation is "only triggered when the employee makes a specific demand for accommodation." *Phillips v. Harbor Venice Mgmt., LLC*, No. 8:19-CV-2379-T-33TGW, 2020 WL 495224, at *5 (M.D. Fla. Jan. 30, 2020 (citation omitted).  "Thus, the initial burden of requesting an accommodation is on the employee, and only after the employee has satisfied the burden and the employer failed to provide the accommodation can the employee prevail on a discrimination claim." *Id.* (citation omitted). Once Plaintiff establishes his prima facie case, "[t]he burden then shifts to the employer to articulate a non-discriminatory reason for the challenged employment action." *Caporicci v. Chipotle Mexican Grill, Inc.*, 189 F. Supp. 3d 1314, 1332 (M.D. Fla. 2016), *aff'd*, 729 F. App'x 812 (11th Cir. 2018).  "If the employer satisfies its burden, the employee may demonstrate that the employer's stated reason is a pretext for unlawful discrimination." *Id.* "The plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the

employer's discriminatory intent." *Id.* (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).

Plaintiff asserts that he has a disability (Doc. 43-5 at 12–13) and that he had numerous human resources positions with the military before becoming employed with Defendant (Doc. 43-5 at 27–30), which implies he would be qualified for the role. Moreover, Mr. Crowther testifies that he felt that Plaintiff was qualified for the role. (Doc. 43-4 at 14). Plaintiff also avers that Defendant discriminated against him by terminating his employment for attending mental health appointments that his supervisor knew he was attending. (Doc. 43-5 at 81 ("The moment that he found out that I was being treated for mental health, he used it against me and fired me.")). Plaintiff also submitted an affidavit stating that he informed Mr. Crowther that he had to attend appointments for mental health counseling to "renew [his] request for the reasonable accommodation relating to [his] disability and to clarify that [his] was a mental health disability related to [his] service." (Doc. 43-2 at 2–3). Defendant's brief does *not* argue that Plaintiff failed to request an accommodation.

Defendant asserts that Plaintiff was terminated for a legitimate non-discriminatory reason—because he failed to work 45-50 hours a week, as agreed upon, and failed to request Paid Time Off and/or Unpaid Time Off for his repeated absences from work. (Doc. 38-9 at 4). Plaintiff argues that this reason is just pre-text for unlawful discrimination. (*See* Doc. 43-5 at 78–79 ("The fact he didn't put it in writing of why he terminated me, . . . it's an indicator to me that it's definitely . . .

11

in large part because of the conversation we had; because if it was excessive absences, why not just put it in writing? . . . [P]rior to that conversation, everything was good. . . . I was working on projects for the future with his blessings. And so if – somebody that was about to be fired, why would he be working on – on projects for the future? And there was . . . zero indication that this was coming.").

A reasonable jury could find that Plaintiff's employment was terminated because he disclosed his disability to Mr. Crowther and that his alleged failure to work a certain amount of hours and failure to request time off were merely pre-text for that discrimination. *Cf. Pennington v. Wal-Mart Stores East, LP*, No. 7:12-cv-860-SLB, 2014 WL 1259727, at *8 (N.D. Ala. Mar. 26, 2014) (finding that argument for pretext failed because "defendant informed plaintiff that her absences were counting against her and that she needed to fix her absence problem," stating that "[d]efendant did not excuse all absences as they occurred and then all of the sudden—upon learning that plaintiff had formally requested accommodation—change course and fire her for previously excused absences. That would be the sort of 'ruse' from which plaintiff could show pretext"). The Court denies summary judgment as to Count II because Plaintiff presented circumstantial evidence that this Court finds creates a triable issue regarding Defendant's discriminatory intent. *See Caporicci*, 189 F. Supp. 3d at 1332.

### III.   Count III – FCRA Retaliation

Count III of the Complaint asserts a claim for retaliation under the FCRA. (Doc. 1 at ¶¶ 56–61). "To make a prime facie case for a claim of retaliation under

Title VII, a plaintiff must first show (1) that "[he] engaged in statutorily protected activity," (2) that "[he] suffered an adverse action," and (3) "that the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (citing *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018)).

> To prove a causal connection for a retaliation claim, a plaintiff need only demonstrate that the protected activity and the adverse action were not wholly unrelated. This element is to be construed broadly. The plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action. One way the plaintiff can establish that the adverse action and protected activity were not wholly unrelated is by showing a close temporal proximity between the employer's discovery of the protected activity and the adverse action. The temporal proximity must be very close. A three-to-four-month delay is too long, while a one-month gap may satisfy the test.

*Debe v. State Farm Mutual Auto. Ins. Co.*, 860 F. App'x 637, 639–40 (11th Cir. 2021) (citations and quotation marks omitted). Here, Plaintiff testifies that he renewed his request for accommodations at a November 2019 meeting (Doc. 43-2 at 2–3) and that he was terminated in the same month that he made the request. (*See* Doc. 43-5 at 81 ("The moment that he found out that I was being treated for mental health, he used it against me and fired me"); Doc. 43-5 at 15 ("I was terminated in the end of November of 2019 . . . ."); Doc. 43-2 at 2 ("In November 2019, David Crowther summoned me to his office. . . . [H]e asked why I had so many doctor appointments . . . [and] I told him . . . I had to attend doctor appointments for mental health counseling.").

13

Defendant does not address whether Plaintiff has satisfied the elements of a prima facie case. Instead, Defendant reiterates its alleged legitimate reasons for terminating Plaintiff's employment. As set forth in Section II, a reasonable jury could find that Plaintiff's employment was terminated because he disclosed his disability to Mr. Crowther and that his failure to work a certain number of hours and failure to request time off was merely pre-text for that discrimination. Accordingly, the Court denies summary judgment as to Count III.

### IV. Count IV – FCRA Hostile Work Environment

Finally, Count IV of the Complaint asserts a claim for hostile work environment under the FCRA. (Doc. 1 at ¶¶ 62–68). To establish this cause of action, Plaintiff must show:

> (1) that [he] belongs to a protected group; (2) that [he] has been subject to unwelcome harassment; (3) that the harassment complained of is based on the protected characteristic; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Thomas v. Seminole Elec. Coop., Inc.*, 385 F. Supp. 3d 1246, 1259 (M.D. Fla. 2018). Plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive to create a discriminatorily abusive working environment, *and* that perception must be objectively reasonable. *Id.* at 1259–60 (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)). In evaluating the objective severity of the harassment, courts consider: "(1) the frequency of the conduct; (2) the

14

severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 1260 (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)). "The Eleventh Circuit approaches these factors by employing 'a totality of the circumstances approach, instead of requiring proof of each factor individually.'" *Callahan v. City of Jacksonville, Fla.*, No. 3:16-cv-01348-J-20JBT, 2019 WL 11486418, at *7 (M.D. Fla. Mar. 18, 2019) (quoting *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238 (11th Cir. 2004)).

Defendant again fails to address these elements. In this instance, however, it is clear that Plaintiff has not established that Defendant created a hostile work environment. Specifically, while Mr. Crowther's alleged comments about Plaintiff's military service and mental health are offensive, they are not sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. The record only shows one instance of harassing conduct, in November 2019, that did not seem to unreasonably interfere with Plaintiff's job performance. Plaintiff testifies that "prior to that conversation, everything was good. There was . . . no animosity. There [were] no negative connotations in our conversations. Business was usual." (Doc. 43-5 at 79). Thus, while the alleged comment was certainly offensive, it was not severe enough, on its own, to create a hostile work environment. *See, e.g.*, *Alansari v. Tropic Star Seafood Inc.*, 388 F. App'x 902, 905 (11th Cir. 2010) (finding that the district court

15

committed no error in finding a plaintiff failed to make a hostile work environment claim when comments "may have been unwanted and even derogatory," but "did not rise to a threatening or humiliating level" and the comments were more akin to "mere offensive utterances" rather than something that unreasonably interfered with the plaintiff's work); *Njie v. Regions Bank*, 198 F. App'x 878, 880 (11th Cir. 2006) (finding that several occasions of racial slurs and uses of words such as "token" and "quota" were not "so pervasive as to alter the terms and conditions of her employment" and thus were not frequent enough or severe enough to constitute a hostile work environment).

Accordingly, the Court grants summary judgment in favor of Defendant as to Count IV.

## CONCLUSION

Summary judgment is granted in favor of Defendant with respect to Count IV only. Counts I, II, and III survive summary judgment. They shall be set to go to trial in accordance with the Case Management and Scheduling Order (Doc. 23). After the Court's thorough review of the record, it strongly recommends—but does not require, at least at this point—that the parties engage in settlement discussions.

For the foregoing reasons, the Court finds that Defendant's Motion for Summary Judgment (Doc. 38) is **GRANTED** in part and **DENIED** in part.

**ORDERED** in Fort Myers, Florida on May 12, 2023.

*/s/ John L. Badalamenti*
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

16